24341

WESTVACO CORPORATION, Appellant v. SOUTH CAROLINA DEPARTMENT OF REVENUE (f/k/a South Carolina Tax Commission); The City of North Charleston; Harley Henderson, The Finance Director for The City of North Charleston; and W. O. Thomas, County Treasurer, Charleston County, and The City of Charleston, Respondents.

(467 S.E. (2d) 739)

Supreme Court

*Elizabeth T. Thomas,* of *Warren & Sinkler,* Charleston, and *Walter Hellerstein,* of *Morrison & Foerster,* New York City, *for Appellant.*

*Chief Deputy Attorney General Ray N. Stevens* and *Deputy Attorney General Ronald W. Urban,* Columbia, *for Respondent S.C. Department of Revenue; Roger M. Young,* North Charleston, *for Respondents City of North Charleston* and *Harley Henderson; A. Arthur Rosenblum,* Charleston, *for Re-*

*spondents County of Charleston* and *W.O. Thomas, County Treasurer; Ann Priest,* Summerville, *for Respondent City of North Charleston; Frances I. Cantwell,* Charleston, *for Respondent City of Charleston.*

*Scott Y. Barnes,* of *Holmes & Thomson,* Charleston, *for Amicus Curiae South Carolina Chamber of Commerce.*

Heard March 22, 1995.

Decided Nov. 6, 1995; Reh. Den. Mar. 7, 1996.

*Per Curiam:*

This appeal arises from the trial judge's finding upholding the constitutionality of the Local Option Sales Tax legislation, S.C. Code §§ 4-10-10 to -100. (Supp. 1994). We affirm.

## FACTS

In 1990, the General Assembly adopted a bill to provide for a Local Option Sales tax (LOST). The LOST legislation allows counties with referendum approval to charge an additional 1% sales or use tax upon sales. S.C. Code Ann. § 4-10-20 (Supp. 1994). The tax is collected and forwarded to the State Treasurer and then redistributed to the counties. The LOST legislation requires a portion of the revenues collected by the counties and municipalities that adopt LOST to be used as a credit to reduce property taxes.[1] The credit against the property tax liability of a taxpayer is determined according to the appraised value of the taxpayer's property. S.C. Code Ann. § 4-10-40(B) (Supp. 1994). The County of Charleston adopted LOST in 1990.

Westvaco, a manufacturer of paper products, owns real and

---

[1] S.C. Code Ann. § 4-10-90(B) (Supp. 1994) provides in part:

All revenues collected by the Department of Revenue and Taxation on behalf of a county area pursuant to this chapter must be remitted to the State Treasurer to be credited to a Local Sales and Use Tax Fund which is separate and distinct from the state general fund. After deducting the amount of refunds made and the costs to the Department of Revenue and Taxation of administering the tax, not to exceed one-half of one percent of the fund or seven hundred fifty thousand dollars, whichever is greater, the State Treasurer shall deposit the revenue into the Local Sales and Use Fund which consists of two separate funds: the Property Tax Credit Fund and the County/Municipal Revenue Fund. The revenue collected pursuant to their chapter must be allocated to each fund as follows: ...

personal property in the County of Charleston and the City of North Charleston. Westvaco filed LOST and property tax returns for 1991 and 1992 and paid these taxes under protest. Thereafter, Westvaco filed this action challenging the allocation of the property tax credit. Westvaco alleged, among other claims, that the LOST legislation violates S.C. Const. art. X, §§ 1 and 6 by effectively altering the uniformity requirements in these sections and that the LOST legislation violates S.C. Const. art. 111, § 17. Westvaco conceded the sales tax itself is constitutional but that the tax credit was severable from the sales tax portion of the Act.

The action was heard by the trial judge without a jury. The trial judge found the LOST scheme did not violate the uniformity and equality requirements of S.C. Const. art. X, §§ 1 and 6. The trial judge found the uniformity and equality provisions inapplicable because the property tax credit was a distribution of funds rather than the levying of tax. The trial judge also held the title of the LOST legislation was not constitutionally deficient under S.C. Const. art. III, § 17 because it provided notice of a distribution. Westvaco appeals.

## DISCUSSION

Westvaco first contends the trial judge erred in finding the property tax credit in the LOST legislation did not violate the uniformity requirements in S.C. Const. art. X, §§ 1 and 6. We disagree.

■ A legislative act will not be declared unconstitutional unless its repugnance to the constitution is clear and beyond a reasonable doubt. *University of South Carolina v. Mehlman,* 245 S.C. 180, 139 S.E. (2d) 771 (1964). A legislative enactment will be declared unconstitutional only

---

(5) During the fifth year after the effective date of this act, and each year thereafter, seventy-one percent to the Property Tax Credit Fund and twenty-nine percent to the County/Municipal Revenue Fund.

The Property Tax Credit Fund is also distributed to the counties and municipalities. The counties receive 6.7% of the fund while the municipalities in the county area receive 33% "so that each municipality receives an amount equal to what its percentage of population bears to the total population in all the municipalities in the county area." S.C. Code Ann. § 4-10-40 (Supp. 1994). All revenue received by a county and municipality from the Property Tax Credit Fund must be used "to provide a credit against the property tax liability of the taxpayers in the county and municipality." S.C. Code Ann. § 4-10-40((B) ((Supp. 1994).

when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates some provision of the constitution. *Id.*

S.C. Const. art. X, § 1, states:

> The General Assembly may provide for the ad valorem taxation by the state or any of its subdivisions of all real and personal property. The *assessment of all property* shall be equal and uniform in the following classifications ... (Emphasis added).

S.C. Const. art. X, § 6 states:

> The General Assembly may vest the power of assessing and collecting taxes in all of the political subdivisions of the State. *Property tax levies* shall be uniform in respect to persons and property within the jurisdiction of the body imposing such taxes ... (emphasis added).

The plain language of article X, §§ 1 and 6 does not impose uniformity on the *distribution* of taxes. *See Davis v. County of Greenville,* 313 S.C. 459, 443 S.E. (2d) 383 (1994). Article X, § 1 requires uniformity in the *assessment of all property.* Under article X, § 6, uniformity is obtained when *property taxes are levied* equally within the county. The LOST scheme has not altered the *levying* of property taxes nor the *assessment* of property. Rather, the scheme merely levies a *sales tax* and *distributes* the *sales tax* in the form of a property tax credit. Because property taxes are assessed and levied regardless of the LOST credit, the trial judge was correct in holding that the LOST plan does not violate article X, §§ 1 and 6 of the Constitution.

Westvaco next argues the title of the LOST legislation does not address the property tax credit and, therefore, violates S.C. Const. art. III, § 17.

S.C. Const. art. III, § 17 provides:

> Every Act ... having the force of law shall relate to but one subject, and that shall be expressed in the title.

The purpose of this provision is to "prevent the General Assembly from being misled into the passage of bills containing provisions not indicated in their titles, and to apprise the people of the subject of proposed legisla-

tion, thereby giving them an opportunity to be heard." *Hercules, Inc. v. South Carolina Tax Comm'n*, 274 S.C. 137, 141, 262 S.E. (2d) 45, 47 (1980). Article III, section 17 requires that an act must relate to but one subject, with topics in the body of the act being kindred in nature and having a legitimate and natural association with the subject of the title and that the title of an act convey reasonable notice of the subject matter to the legislature and the public. *Id.* at 141-42, 262 S.E. (2d) at 47-48. Additionally, Article III, section 17 should be liberally construed so as to uphold an act. *Powell v. Red Carpet Lounge*, 280 S.C. 142, 311 S.E. (2d) 719 (1984).

The title to the LOST legislation provides:

> AN ACT TO AMEND THE CODE OF LAWS OF SOUTH CAROLINA, 1976, BY ADDING CHAPTER 10 TO TITLE 4 SO AS TO PROVIDE FOR THE LEVY OF A SALES AND USE TAX IN A COUNTY AREA BY SETTING FORTH DEFINITIONS, PURPOSES, AND REQUIREMENTS FOR A REFERENDUM, COLLECTION, USES, AND DISTRIBUTION; TO AMEND SECTION 12-35-580, RELATING TO A STATEMENT AND PREPAYMENT OF ESTIMATED SALES TAX LIABILITY, SO AS TO EXCLUDE THE IMPOSITION OF THE LOCAL OPTION SALES AND USE TAX FROM THE SECTION AND TO PROVIDE FOR AN ALLOCATION TO AND REIMBURSEMENT BY THE TAX COMMISSION FOR ADMINISTRATIVE EXPENSES TO IMPLEMENT THE TAX.

The title of the Act meets the requirements of article III, § 17. The title states the general subject, local option sales tax. The title also specifically states the requirements for a "referendum, collection, uses, and *distribution*" of such a tax are contained therein. The property tax credit is merely the distribution of the local option sales tax and, therefore, the topics in the local option sales tax statutes are clearly kindred in nature and have a legitimate and natural association with the subject of the title. Additionally, the title clearly conveys reasonable notice that the distribution scheme of the local option sales tax is within this act. We find the LOST legislation does not violate S.C. Const. art. III, § 17. *Hercules, supra.*

Accordingly, for the reasons stated the trial judge is AFFIRMED.