741 S.E.2d 727

**The STATE, Respondent,**

v.

**Andrew Lee HARRISON, Appellant.**

**Appellate Case No. 2010–178686.**

**No. 27228.**

Supreme Court of South Carolina.

Heard Oct. 30, 2012.
Decided Feb. 27, 2013.
Rehearing Denied April 3, 2013.

---

Janna A. Nelson of Greenwood, and Susan Barber Hackett, of Columbia, for appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General William M. Blitch, Jr., all of Columbia and Solicitor Jerry W. Peace, of Greenwood, for respondent.

Chief Justice TOAL.

Andrew Lee Harrison (Appellant) contends that the trial court erred in refusing to find that the penalty portion of section 56–5–1210 of the South Carolina Code offends the Eighth Amendment to the United States Constitution. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On the morning of September 27, 2009, Appellant picked up a 2003 Ford F–350 truck from Wilson's Auto Sales for detailing. Appellant drove the truck a short distance in Greenwood County on U.S. Route 25 (Highway 25), a highway comprised of two northbound and southbound lanes. Appellant travelled to Parson's Used Cars to perform the detailing work. At approximately 3:00 p.m., Appellant completed the detailing work and exited Parson's by making a right turn onto the southbound lane of Highway 25.

Gary Tims (the Victim) and Daniel Gantt were travelling on Highway 25 in the same direction as Appellant, and in the left lane. The Victim and Gantt were both riding motorcycles. Gantt rode approximately one "bike length" behind the Victim. Appellant entered Highway 25, but instead of utilizing the right lane, pulled his vehicle into the left lane. The Victim lost temporary control of his motorcycle and shifted to the right lane to avoid Appellant's vehicle. However, Appellant simul-

taneously switched to the right lane and the Victim struck the rear of Appellant's truck. The Victim's motorcycle "flipped over," and the Victim landed in the highway. Appellant did not stop, but continued driving on Highway 25. Gantt followed Appellant until Appellant pulled over approximately one-half mile from the accident. Gantt informed Appellant that the Victim was "laying [sic] down in the highway," and that Gantt did not know whether the Victim was "dead or alive." Appellant inspected the damage to the truck and stated that he did not possess a valid driver's license, because his driver's license had been suspended. Appellant agreed to return to the scene of the accident. However, once Gantt departed to return to the scene, Appellant travelled in the opposite direction. It is undisputed that Appellant never returned to the scene of the accident. Law enforcement officers later located Appellant hiding in the closet of a vacant house and placed him in custody.

The Greenwood County Grand Jury indicted Appellant for driving under suspension, in violation of section 56–1–0460 of the South Carolina Code and leaving the scene with death, in violation of section 56–5–1210 of the South Carolina Code. A jury convicted Appellant of both charges. The trial court sentenced Appellant to twenty years' imprisonment for leaving the scene with death, and a concurrent sentence of six months' imprisonment for driving under suspension. Appellant argues that section 56–5–1210 is unconstitutional, and appealed his conviction pursuant to Rule 203(d), SCACR.

## ISSUE PRESENTED

Whether the trial court erred in finding that the penalty portion of section 565–1210 of the South Carolina Code does not offend the Eighth Amendment's prohibition against cruel and unusual punishment.

## STANDARD OF REVIEW

This Court has a very limited scope of review in cases involving a constitutional challenge to a statute. *Joytime Distrib. & Amusement Co. v. State*, 338 S.C. 634, 640, 528 S.E.2d 647, 651 (1999). All statutes are presumed constitutional and will, if possible, be construed so as to render them

valid. *Davis v. Cnty. of Greenville,* 322 S.C. 73, 77, 470 S.E.2d 94, 96 (1996). A legislative act will not be declared unconstitutional unless its repugnance to the constitution is clear beyond a reasonable doubt. *Westvaco Corp. v. S.C. Dep't of Revenue,* 321 S.C. 59, 62, 467 S.E.2d 739, 741 (1995).

## LAW/ANALYSIS

Appellant argues that the trial court erred in refusing to find that the penalty provision of section 56–5–1210 of the South Carolina Code, and his sentence pursuant to that provision, violates the Eighth Amendment. We disagree.

▮ The Eighth Amendment to the United States Constitution, which applies against the States by virtue of the Fourteenth Amendment, provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The Eighth Amendment prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime. *Solem v. Helm,* 463 U.S. 277, 284, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

### A. The Proportionality Principle

The United States Supreme Court first recognized a constitutional principle of proportionality in *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910). In that case the defendant had been convicted of falsifying a public document and sentenced to fifteen years of "cadena temporal," a type of imprisonment including hard labor in chains, and permanent civil disabilities. *Id.* at 367, 30 S.Ct. 544. The Supreme Court held the punishment cruel and unusual because it was not graduated and proportioned to offense, and therefore violated the Eighth Amendment. *Id.* In *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), the Supreme Court held a 90–day sentence for the crime of "addicted to the use of narcotics," excessive despite the fact that such a short sentence is not, in the abstract, cruel or unusual. *Id.* at 667, 82 S.Ct. 1417. However, the Supreme Court looked at the actual nature of the crime in finding,

"Even one day in prison would be a cruel and unusual punishment for the 'crime' of having a common cold."[1] *Id.*

In *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the Supreme Court applied the proportionality principle to a felony prison term. In that case, the defendant pled guilty to check fraud. *Id.* at 281, 103 S.Ct. 3001. At the time of his conviction, South Dakota law provided for a maximum punishment of five years' imprisonment and a $5,000 fine. *Id.* However, the defendant was sentenced pursuant to the state's recidivist statute due to his six previous non-felony convictions. *Id.* (citing S.D. Codified Laws § 32–23–4 (1976)). The recidivist statute mandated that a defendant convicted of three prior felonies, in addition to the principal felony, receive life imprisonment. *Id.* at 281–82, 103 S.Ct. 3001 ("The maximum penalty for a 'Class 1 felony' was life imprisonment in the state penitentiary and a $25,000 fine."). Following exhaustion of his state appeals, the defendant sought habeas relief. *Id.* at 283–84, 103 S.Ct. 3001. The United States Court of Appeals for the Eighth Circuit held the defendant's sentence "grossly disproportionate to the nature of the offense," and ordered the District Court to issue the writ unless the State resentenced the defendant. *Id.* at 284, 103 S.Ct. 3001. The Supreme Court affirmed, and provided "objective factors" to guide courts in reviewing the proportionality of sentences under the Eighth Amendment.

First, courts should look to the gravity of the offense and the harshness of the penalty. *Id.* at 290–91, 103 S.Ct. 3001. Second, it may be helpful to compare the sentence to sentences imposed on other criminals in the same jurisdiction. *Id.* at 291, 103 S.Ct. 3001. If more serious crimes carry the same penalty, or less serious penalties, then that is some indication that the punishment at issue may be excessive. *Id.* Third, courts may also compare the sentences imposed for the

---

1. Later, the Supreme Court applied the proportionality principle to hold capital punishment excessive in certain circumstances. *See Enmund v. Florida,* 458 U.S. 782, 798–801, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) (finding the death penalty an excessive punishment for felony murder when defendant did not take life, attempt to take life, or intend that life be taken or that lethal force be used); *Coker v. Ga.,* 433 U.S. 584, 592, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977) (holding the death penalty excessive punishment for the crime of rape).

commission of the same crime in other jurisdictions. *Id.* at 291–92, 103 S.Ct. 3001 ("In *Enmund* [*v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) ], the Court conducted an extensive review of capital punishment statutes and determined that 'only about a third of American jurisdictions would ever permit a defendant [such as Enmund] to be sentenced to die.' " (alterations in original)). The Court applied these objective criteria to the defendant's crime and found that he received the "penultimate sentence for relatively minor criminal conduct." *Id.* at 303, 103 S.Ct. 3001 ("He has been treated more harshly than other criminals in the State who have committed more serious crimes. He has been treated more harshly than he would have been in any other jurisdiction, with the possible exception of a single state. We conclude that his sentence is significantly disproportionate to his crime, and is therefore prohibited by the Eighth Amendment.").

*Solem* appeared to stand for a continued, if not strengthened, Eighth Amendment prohibition against disproportional sentences. However, in *Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), the Supreme Court narrowed, significantly at points, its proportionality guidance.

In *Harmelin,* the petitioner was convicted of possessing more than 650 grams of cocaine and sentenced to a mandatory term of life imprisonment without the possibility of parole. 501 U.S. at 961, 111 S.Ct. 2680. The petitioner claimed that his sentence violated the Eighth Amendment because it was "significantly disproportionate" to the crime he committed, and because the sentencing court was statutorily required to impose the term of imprisonment without taking into account the particularized circumstances of the crime and of the criminal. *Id.* at 961–62, 111 S.Ct. 2680.

Justice Scalia delivered the Court's decision in a four part opinion, and concluded that the Eighth Amendment contains no proportionality review. *Id.* at 965, 111 S.Ct. 2680 ("We have addressed anew, and in greater detail, the question whether the Eighth Amendment contains a proportionality guarantee—with particular attention to the background of the Eighth Amendment (which *Solem* discussed in only two pages.)").

In Parts I and II of the opinion, Justice Scalia rejected the notion that the framers of the Federal Constitution intended the Eighth Amendment to prohibit disproportionate punishments. Justice Scalia noted specifically that state constitutions at the time contained such provisions, but the framers of the Federal Constitution specifically chose not to include such a guarantee. *Id.* 978–85, 111 S.Ct. 2680 ("Both the New Hampshire Constitution, adopted 8 years before ratification of the Eighth Amendment, and the Ohio Constitution, adopted 12 years after, contain, in separate provisions, a prohibition of 'cruel and unusual punishments' ... *and* a requirement that 'all penalties ought to be proportioned to the nature of the offence.'" (emphasis in original)). In Part III of the opinion, Justice Scalia expressed his disapproval that 20th century Supreme Court jurisprudence did not directly reflect the idea that the Eighth Amendment does not contain a proportionality requirement. *Id.* at 990, 111 S.Ct. 2680. Justice Scalia's point of view on this issue can be succinctly summarized: A sentence within statutory limits is not cruel and unusual punishment, but to the extent the Court applied a proportionality review to capital punishment, "death is different," and courts should "leave it there," and not extend it further. *Id.* at 992–93, 111 S.Ct. 2680. In Part IV of the opinion, Justice Scalia analyzed the petitioner's claim that imposition of a severe punishment without consideration of mitigating factors, such as lack of prior felony convictions, constituted cruel and unusual punishment. *Id.* at 994, 111 S.Ct. 2680. The Supreme Court had previously held that a capital sentence is cruel and unusual if it is imposed without an individualized determination that the punishment is "appropriate." *Id.* at 995, 111 S.Ct. 2680. However, according to Justice Scalia, even a severe sentence, such as life without the possibility of parole, cannot compare with the finality and irrevocability of death. *Id.* at 995–96, 111 S.Ct. 2680. Thus, the Supreme Court declined to extend the individualized sentencing analysis outside the capital context. *Id.*

Chief Justice Rehnquist joined Justice Scalia in Parts I–IV of the opinion. Justices Kennedy, O'Connor, and Souter joined Justice Scalia in Part IV of the opinion. Justice Kennedy wrote separately, concurring in part and concurring in the judgment. *Id.* at 996. Justice O'Connor and Justice

Souter joined Justice Kennedy's concurrence. *Id.* Justices White, Marshall, Stevens, and Blackmun dissented. *Id.* at 1009–29, 111 S.Ct. 2680.

Justice Kennedy's concurrence adhered to a narrow proportionality principle:

All of these principles—the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors—inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime.

*Id.* at 998, 1001, 111 S.Ct. 2680 (citation omitted).

Justice Kennedy wrote that *Solem* did not announce a rigid three-part test, but instead considered comparative factors after analyzing the gravity of the offense and the harshness of the penalty.

*Solem* is best understood as holding that comparative analysis within and between jurisdictions is not always relevant to proportionality review. The [*Solem* ] Court stated that "it *may* be helpful to compare sentences imposed on other criminals in the same jurisdiction," and that "courts *may* find it useful to compare sentences imposed for commission of the same crime in other jurisdictions." It did not mandate such inquires.

*Id.* at 1004, 111 S.Ct. 2680 ("In fact, *Solem* stated that in determining unconstitutional disproportionality, 'no one factor will be dispositive in a given case.' ") (citation omitted). Thus, Justice Kennedy concluded:

A better reading of our cases leads to the conclusion that intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality.

*Id.* at 1005, 111 S.Ct. 2680.

This Court has yet to definitively reconcile the *Solem* factors with *Harmelin.* In *State v. Jones,* 344 S.C. 48, 543 S.E.2d 541 (2001), the defendant challenged section 17–25–45

of the South Carolina Code. *See* S.C.Code Ann. § 17–25–45 (Supp.2011) ("Life sentence for person convicted of certain crimes"). The defendant asserted, *inter alia,* that the statute constituted cruel and unusual punishment. *Id.* at 56, 543 S.E.2d at 544–45. We analyzed the defendant's claim pursuant to *Solem,* but acknowledged that this exercise may not have been necessary due to *Harmelin:*

> It is questionable, in light of the United States Supreme Court's opinion in *Harmelin v. Michigan,* whether the stringent three-factor *Solem* inquiry remains mandated in "cruel and unusual punishment" cases. However, we need not decide the matter here since, in our view, even the more stringent test of *Solem* is met in this case.

*Id.* at 56 n. 11, 543 S.E.2d at 545 n. 11 (citation omitted); *see State v. McKnight,* 352 S.C. 635, 652 n. 7, 576 S.E.2d 168, 177 n. 7 (2003) ("It is questionable, in light of the United States Supreme Court's opinion in *Harmelin v. Michigan,* whether the stringent three-factor *Solem* inquiry remains mandated in 'cruel and unusual punishment' cases." (citing *State v. Brannon,* 341 S.C. 271, 533 S.E.2d 345 (Ct.App.2000))).

However, we now hold that Justice Kennedy's concurrence is the controlling law of *Harmelin,* and represents a significant constraint on the *Solem* test. *See Hawkins v. Hargett,* 200 F.3d 1279, 1282 n. 1 (10th Cir.1999) ("The controlling position is the one 'taken by those Members who concurred in the judgments on the narrowest grounds.'") (citing *Marks v. United States,* 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977)). The decisions of federal circuit courts addressing the proportionality principle reflect this view. *United States v. MacEwan,* 445 F.3d 237, 248 (3d Cir.2006) ("Consequently, in assessing such a challenge, the first proportionality factor acts as a gateway or threshold. If the defendant fails to show a gross imbalance between the crime and the sentence, our analysis is at an end."); *McGruder v. Puckett,* 954 F.2d 313, 314 (5th Cir.1992); *McCullough v. Singletary,* 967 F.2d 530, 535 (11th Cir.1992) ("The Fifth Circuit held that if a determination was made that a sentence was grossly disproportionate after comparing the sentence to the offense, only then would the remaining *Solem* factors be considered. We agree with the *McGruder* analysis.") (citation omitted); *United States v. Bland,* 961 F.2d 123, 129 (9th Cir.1992) ("We conclude that

Justice Kennedy's view that the eighth amendment 'forbids only extreme sentences that are grossly disproportionate to the crime' is the rule of *Harmelin*."); *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir.1991) ("Hooper's ten-month jail term easily survives the 'narrow proportionality principle' applied by the *Harmelin* plurality, the opinion that is, we believe, binding upon us."); *United States v. Johnson*, 944 F.2d 396, 409 (8th Cir.1991) (declining to find gross disproportionality and "in light of *Harmelin*," finding a proportionality review unnecessary); *see also Clark v. State*, 188 Md.App. 185, 981 A.2d 710, 712 (2009) ("The submission invokes a two-step analysis. First, we must 'determine whether the sentence appears to be grossly disproportionate.' If so, then we should 'engage in a more detailed *Solem* [*v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)] type analysis.'") (citations omitted); *Dunaway v. Commonwealth of Virginia*, 52 Va.App. 281, 663 S.E.2d 117, 132 (2008) ("Thus, we examine the sentence at issue in relation to the crime only for 'gross disproportionality.'" "Only if we find such gross disparity will we proceed further with the analysis.") [2]

 We find that the foregoing authority demonstrates the proper articulation of proportionality review as discussed in *Harmelin* and *Somelin*. Thus, in analyzing proportionality under the Eight Amendment outside the capital context, South

---

2. We note that the United States Court of Appeals for the Fourth Circuit appears to continue to apply the full *Solem* test:

It may be somewhat unclear, in light of the Supreme Court's decision in *Harmelin*, whether *Solem*'s three-part proportionality test is still relevant in noncapital cases. Indeed as noted above, the *Harmelin* Court issued three separate, and somewhat conflicting, opinions discussing the scope of the Eighth Amendment's proportionality guarantee, which ranged from a virtual repudiation of *Solem* ... to a recognition of a "narrow" proportionality doctrine ... to an explicit approval of *Solem*.... Despite the Court's conflicting opinions on the issue, however, the continuing applicability of the *Solem* test is indicated by the fact that a majority of the *Harmelin* Court either declined expressly to overrule *Solem* or explicitly approved of *Solem*. *United States v. Kratsas*, 45 F.3d 63, 67 (4th Cir.1995) (rejecting the defendant's claim that a sentence of life without parole for conspiracy to distribute and possession with intent to distribute five kilograms or more of cocaine is disproportionate punishment under the Eighth Amendment). However, Justice Kennedy's concurrence explicitly narrowed *Solem*. Thus we decline to follow the Fourth Circuit's precedent regarding *Solem* and *Harmelin*.

Carolina courts shall first determine whether a comparison between the sentence and the crime committed gives rise to an inference of gross disproportionality. If no such inference is present, the analysis ends. In the rare instance that this threshold comparison gives rise to such an inference, intrajurisdictional and interjurisdictional analysis is appropriate. Courts may then look to whether more serious crimes carry the same penalty, or more serious penalties, and the sentences imposed for commission of the same crime in other jurisdictions. Courts should use this comparative analysis to confirm the gross disproportionality inference, and not to develop an inference when one did not initially exist. *See Harmelin,* 501 U.S. at 1005, 111 S.Ct. 2680 ("The proper role for comparative analysis of sentences, then, is to validate an initial judgment that a sentence is grossly disproportionate to a crime. This conclusion neither 'eviscerates' *Solem,* nor 'abandons its second and third factors.' "). Having articulated the proper framework for Eighth Amendment proportionality review, we turn to the facts of Appellant's case.

### B. Proportionality of Section 56–5–1210

■ Under section 56–5–1210 of the South Carolina Code, the driver of a vehicle involved in an accident resulting in injury or death must immediately stop their vehicle at the scene of the accident or as close to the accident as possible. S.C.Code Ann. § 56–5–210(A) (2006). In the event that death occurs from the accident, a person who fails to stop or comply with the requirements of section 56–5–1210 is guilty of a felony. *Id.* § 56–5–1210(A)(3). Upon conviction, the defendant must be imprisoned for at least one year, but not more than twenty-five years, and fined between $10,000 and $25,000 dollars. *Id.*

Appellant argues that the gravity of the offense in this case is not proportionate to the severity of the punishment. According to Appellant, "the unlawful conduct is the same whether leaving the accident scene results in property damage to an unattended vehicle or death of another party involved in the accident." Additionally, Appellant avers that the statute does not require a defendant to have caused the accident to be charged with leaving the scene, "and the penalty adjusts based on the result rather than on the underlying conduct of leav-

ing." Appellant may raise valid points demonstrating the statutes possible weaknesses. However, the proper inquiry is not whether the General Assembly crafted the most *correct* or *just* scheme to address the covered conduct, but instead whether the General Assembly could rationally conclude that the conduct poses a risk substantial enough to support the penalty portion of the statute.

In 1996, the General Assembly amended section 56–5–1210 to provide for the current penalties for leaving the scene of the accident where death occurs. The alarming facts regarding South Carolina road and vehicle safety support the General Assembly's decision to allow a possibly severe penalty in the event an individual decides to leave the scene of an accident in which death results. In 1995, South Carolina had over 125,000 automobile collisions, and 882 of those collisions resulted in death. SOUTH CAROLINA BUDGET AND CONTROL BOARD, South Carolina Statistical Abstract, South Carolina Traffic Collisions, Fatalities, Non–Fatal Injuries, Mileage Death Rate and Vehicle Miles of Travel (1970–2005), *available at* http://abstract.sc. gov/chapter16/transport6.php. The next year, there were over 120,000 collisions, and 930 deaths related to those collisions. *Id.* Over the next ten years, the number of collisions per year fell below 100,000 only once, and the number of fatalities remained constant at over 900 per year. *Id.*

More recent statistics demonstrate an equally troubling picture. In 2006, South Carolina tied for fifth worst in the nation in terms of traffic fatalities per 100 million vehicle miles. UNITED STATES CENSUS BUREAU, http://www.census.gov/ statab/ranks/rank39.html (last visited Oct. 24, 2012). According to the South Carolina Department of Public Safety, approximately 106,864 automobile accidents occurred in South Carolina in 2009, and of those, 48,303 resulted in non-fatal injury and 894 resulted in death. SOUTH CAROLINA TRAFFIC COLLISION FACT BOOK (2009), *available at* http://www.scdps.gov/ ohs/2009TrafficCollisionFactBook.pdf. In 2009, forty-two percent of all traffic deaths in South Carolina resulted from driving under the influence of alcohol. *Id.* at 76. Only two states in the nation reported higher totals. *Id.* This limited summary alone supports the General Assembly's decision to create a statute that deters individuals from leaving the scene of a vehicular accident.

The structure of the statute itself addresses Appellant's argument. Section 56–5–1210 gives the trial court broad discretion to account for the unique facts and circumstances of individual cases. If an individual leaves the scene of the accident, the conduct is technically the same, whether property damage or death results. However, the statute does not provide the same *penalty* for that conduct. *See* S.C.Code Ann. § 56–5–1210(A)(1)–(3) (2006). Depending on the circumstances of the particular accident, the trial court may choose to sentence a defendant to as little as one year in jail, even if death occurs. *Id.* § 56–5–1210(A)(3).

However, Appellant's actions appear to be just the type the General Assembly intended to punish when enacting section 56–5–1210. Appellant operated a motor vehicle without a driver's license. He negligently placed that vehicle in front of the Victim so that he was unable to avoid a collision. Subsequently, Appellant did not stop to consider the accident at all until a third party followed him some distance down the road. Appellant expressed more concern regarding possible damage to his vehicle than to the Victim, and refused to return to the scene of the crime. In sum, Appellant caused an accident, left the scene of that accident, and when confronted with the possibility that the other party to the accident had been severely injured or killed, refused to return to the scene of the accident. Despite Appellant's reprehensible behavior, the trial court did not sentence him to the maximum punishment under the statute.

The trial court balanced Appellant's behavior, prior criminal history, and absence of intent:

I understand that there was no intent to cause this accident, I understand that you did not set out on this particular day to injure [the Victim] or anyone else, for that matter. The inescapable fact, though ... is that in reality you caused this accident by being present where you had no business to be and that you were driving a car, sir.... I also have to consider your criminal history. I count [twenty-seven] offenses. A lot of these, I agree with your attorney, they happened when you were young and I understand ... how young people can make mistakes ... I just can't disregard it ... because you have demonstrated over and over again a pattern of being unable to not only obey the law but to stay

out from behind the wheel of a car.... It is my job to take all of this into consideration and work out some sort of calculation, and I'm not all unsympathetic to the arguments of counsel that you are being punished far in excess.

The trial court's statements at sentencing are the very embodiment of proportionality, and the court performed the analysis envisioned by the statute's broad penalty provision and in sentencing Appellant based on the facts and circumstances of the case. It is inexplicable that a statute's provisions which give a trial court the discretion to sentence the defendant in proportion to the circumstances of the case, could be found to give rise to an inference of gross disproportionality.

The United States Supreme Court has explicitly recognized that the legislature has the power to define criminal punishments without giving the courts any sentencing discretion. *See, e.g., Chapman v. United States,* 500 U.S. 453, 467, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991); *see also Harmelin,* 501 U.S. at 1006, 111 S.Ct. 2680 ("To set aside petitioner's mandatory sentence would require rejection not of the judgment of a single jurist, as in *Solem,* but rather the collective wisdom of the Michigan Legislature, and, as a consequence, the Michigan citizenry. We have never invalidated a penalty by a legislature based only on the length of a sentence ... we should do so only in the most extreme circumstances."). Courts do not have to accept the wisdom of a legislature's sentencing scheme, but merely accept the fact that arguments for or against a particular sentencing scheme are for the legislature to resolve. *See Harmelin,* 501 U.S. at 1007-08, 111 S.Ct. 2680 (questioning the actual deterrent effect of the law's mandatory scheme, but refusing to find that it had no chance of success).

Based on the foregoing analysis, we find that the General Assembly could rationally conclude that leaving the scene of an accident where death results poses a risk substantial enough to support the penalty portion of the statute. Thus, we hold that the penalty provision of section 56-5-1210 is not grossly disproportionate to the offense, and no further review is necessary. *See Futch v. McAllister Towing of Georgetown,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its

determination of a prior issue is dispositive of the appeal). However, we continue our discussion to provide guidance on this previously unfamiliar analysis for the benefit of the bench and bar. *See, e.g., Harris v. Anderson Cnty. Sheriff's Office,* 381 S.C. 357, 364, 673 S.E.2d 423, 427 (2009) ("We broach this subject for the benefit of the bench and bar, as some adhere to the belief that section 47–3–110 liability against a dog owner incorporates negligence principles.").

### i. *Intrajurisdictional Comparisons*

■ Appellant argues that the penalty imposed under section 56–5–1210 is greater than the penalty that can be imposed for more serious crimes under South Carolina law. If more serious crimes are subject to the same penalty, or to less serious penalties, that is some indication that the punishment at issue may be excessive. *Solem,* 463 U.S. at 291, 103 S.Ct. 3001.

In *Solem,* where the defendant had been sentenced to a life sentence without parole for habitual nonviolent offenses, the Supreme Court considered the sentences that could be imposed on other criminals within the same jurisdiction. *Id.* at 298, 103 S.Ct. 3001. The Court found that:

In sum, there were a handful of crimes that were necessarily punished by life imprisonment: murder, and, on a second or third offense, treason, first degree manslaughter, first degree arson, and kidnapping. There was a larger group for which life imprisonment was authorized in the discretion of the sentencing judge. Finally, there was a large group of very serious offenses for which life imprisonment was not authorized, including a third offense of heroin dealing or aggravated assault.

*Id.* at 298–99, 103 S.Ct. 3001. Based on this review, the Court found that the defendant had been treated "in the same manner as, or more severely than," criminals who committed far more serious crimes. *Id.* at 299, 103 S.Ct. 3001.

■ Review of analogous provisions under the South Carolina Code tends to support the notion that section 56–5–1210 provides a penalty substantially similar to more serious offenses. For example, section 56–5–2910 of the South Carolina

Code covers reckless vehicular homicide. That statute provides in pertinent part:

When the death of a person ensues within three years as a proximate result of injury received by the driving of a vehicle in reckless disregard of the safety of others, the person operating the vehicle is guilty of reckless vehicular homicide. A person who is convicted of, pleads guilty to, or pleads nolo contendere to reckless vehicular homicide is guilty of a felony, and *must be fined not less than one thousand dollars nor more than five thousand dollars or imprisoned not more than ten years or both.*

S.C.Code Ann. § 56–5–2910 (Supp.2012) (emphasis added).

Section 56–5–2945 of the South Carolina Code mirrors section 56–5–1210's penalty provision, but for what is arguably a much more serious crime. Section 56–5–2945 covers the offense of felony driving under the influence, and provides in pertinent part:

(A) A person who, while under the influence of alcohol, drugs, or the combination of alcohol and drugs, drives a motor vehicle and when driving a motor vehicle does any act forbidden by law or neglects any duty imposed by law in the driving of the motor vehicle, which act or neglect proximately causes great bodily injury or death to a person other than himself, is guilty of the offense of felony driving under the influence and, upon conviction, must be punished:

(1) by a mandatory fine of not less than five thousand one hundred dollars or more than ten thousand one hundred dollars and mandatory imprisonment for *not less than thirty days nor more than fifteen years when great bodily injury results;*

(2) by a mandatory fine of not less than ten thousand one hundred dollars nor more than twenty-five thousand one hundred dollars and mandatory imprisonment for *not less than one year nor more than twenty-five years when death results.*

S.C.Code Ann. § 56–5–2945 (Supp.2011) (emphasis added). Thus, an individual who causes the death of another either through reckless driving or driving while intoxicated may face the same or similar punishment as someone who leaves the

scene of an accident where death results. However, a person convicted of involuntary manslaughter, a crime requiring a showing of criminal negligence, may be imprisoned for no more than five years.[3] At first glance, this appears to be the very type of constitutionally impermissible disproportionality observed in *Solem.* Essentially, one could argue that an individual who leaves the scene of a deadly accident for which they are technically not "at fault," could receive a harsher penalty than someone who acts with reckless intent and a proven careless disregard for the safety of others.

*Harmelin* cautions against drawing such conclusions based on bare comparisons. According to Justice Kennedy, one of the key limits on proportionality review is that the fixing of prison terms for specific crimes involves a substantial penological judgment, a judgment not best exercised by the courts. *Harmelin,* 501 U.S. at 998, 111 S.Ct. 2680. In addition, the efficacy of any sentencing system cannot be assessed absent agreement about the purposes and objectives of the penal system. *Id.* at 998–1000, 111 S.Ct. 2680. The responsibility for making these fundamental choices and implementing them lies with the legislature. *Id.* at 999–1000, 111 S.Ct. 2680. The General Assembly's sentencing scheme reflects the complexity of circumstances arising from dangerous traffic offenses, and allows the entity in the best position to assess the evidence, the trial court, discretion in determining the appropriate punishment. It is not irrational to conceive of a scenario in which leaving the scene of an accident resulting in death might call for a greater punishment than causing a death due to felony driving under the influence. Thus, we refuse to conclude that the General Assembly must ignore valid factual and policy considerations in favor of abstract notions of proportionality.[4]

Moreover, offenders sentenced under section 56–5–1210 are not necessarily subject to a harsher punishment than criminals convicted of more serious crimes. The sentencing scheme

---

3. *See* S.C.Code Ann. § 16–3–60 (2003).

4. The General Assembly may have concluded, for example, that an individual, who acted negligently, perhaps in the involuntary manslaughter context, deserves a lighter sentence than someone in Appellant's case who caused a death by purposeful conduct, and then refused to even acknowledge the resulting chaos.

merely allows the trial court discretion in balancing the many factors at play in cases where operation of a motor vehicle results in death. Our analysis does not stand for the proposition that this Court cannot properly draw a line between certain penalties, and decide that one penalty violates the Eighth Amendment while another does not. *See Solem,* 463 U.S. at 294, 103 S.Ct. 3001 ("Decisions of this kind, although troubling, are not unique to this area. The courts are constantly called upon to draw similar lines in a variety of contexts."). However, in the instant case, the question before the Court is not one of fixed penalties. Instead, this Court is asked to draw a line which says that the General Assembly should give trial courts sentencing discretion with regard to some crimes and not others. This type of determination, and the conflicting interests and disagreements of discretion and sentencing, are strictly questions of legislative policy. *See Harmelin,* 501 U.S. at 998–99, 111 S.Ct. 2680 ("Thus 'reviewing courts ... should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes.' "). An intrajurisdictional comparison in this case could not support an inference of gross disproportionality.

### ii. *Interjurisdictional Comparisons*

■ Courts conducting a proportionality review may find it useful to compare the sentences imposed for commission of the crime in other jurisdictions. In *Enmund v. Florida,* 458 U.S. 782, 801, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1983), the Supreme Court held that the death penalty was excessive for felony murder when the defendant did not take life, attempt to take life, or intend that life be taken or that lethal force be used. In that case, the Court conducted an extensive review of capital punishment statutes and determined that "only about a third of American jurisdictions would ever permit a defendant [such as the defendant] to be sentenced to die." *Id.* at 792, 102 S.Ct. 3368. Here, Appellant argues that other states impose less severe penalties for the leaving the scene of an accident where death results, and the majority of the country believes that a penalty of ten years or less is appropriate for the offense in question. However, a review of those penalties merely demonstrates constitutionally permissible dif-

ferences in the way different states choose to approach similar issues.

For example, Appellant cites section 40–6–270 of the Georgia Code which addresses the duty of a driver in accidents involving personal injury or death. That statute provides in pertinent part:

 (a) The driver of any vehicle involved in an accident resulting in injury to or the death of any person or in damage to a vehicle which is driven or attended by any person shall immediately stop such vehicle at the scene of the accident or shall stop as close thereto as possible and forthwith return to the scene of the accident. . . .

 (b) If such accident is the proximate cause of death or a serious injury, any person knowingly failing to stop and comply with the requirements of subsection (a) of this Code section shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than one nor more than five years.

Ga.Code Ann. § 40–6–270 (2011). However, depending on the circumstances of the offense the penalty can rise to between three and fifteen years' imprisonment pursuant to section 40–6–393 of the Georgia Code:

 (b) Any driver of a motor vehicle who, without malice aforethought, causes an accident which causes the death of another person and leaves the scene of the accident in violation of subsection (b) of Code Section 40–6–270 commits the offense of homicide by vehicle in the first degree and, upon conviction thereof, shall be punished by imprisonment for not less than three years nor more than 15 years.

*Id.* § 40–6–393 (2011). The sentencing range of section 56–5–1210 is not substantially different than the penalty provided for by statute in neighboring Georgia.

Sentences for offenses similar to Appellant's vary from jurisdiction to jurisdiction. Some states provide a lesser penalty than South Carolina. For example, Delaware and Kentucky provide for a maximum five year sentence for the offense. *See* Del.Code Ann. Title 21, §§ 4202–05 (2005 & Supp.2010); Ky.Rev.Stat. Ann. §§ 189.580, 189.990 (Lexis–Nexis 2009 & Supp.2012), 532.020 (Lexis–Nexis 2008). Of-

fenders convicted in Maryland or Virginia may receive no more than ten years' imprisonment. *See* Md.Code Ann., Transportation, § 20–102; 27–113(c) (Lexis–Nexis 2009); Va. Code Ann. § 46.2–894 (2010), 18.2–10 (2009). In Michigan and Nevada, an offender may receive up to fifteen years' imprisonment. *See* Mich. Comp. Laws Ann. § 257.617 (West 2005); Nev.Rev.Stat. Ann. § 484E.010 (Lexis–Nexis 2010). However, Nebraska provides a maximum sentence of twenty years' imprisonment, and the Wisconsin statute provides the same twenty-five year maximum as section 56–5–1210 of the South Carolina Code. *See* Neb.Rev.Stat. §§ 60–697, 60–698 (Supp. 2011), 28–105 (2008); Wash. Rev.Code Ann. §§ 346.67 (West 1998), 346.74 (West Supp.2012), 939.50 (West 2003). These varying sentencing schemes are indicative of different legislative determinations and policy choices, but certainly not disproportionality.

■■■■ The Eighth Amendment does not mandate adoption of a national penological theory. *Harmelin,* 501 U.S. at 999, 111 S.Ct. 2680. Different governments will inevitably attach differing weights to the traditional penological goals of retribution, deterrence, incapacitation, and rehabilitation. *See id.* (citing *Mistretta v. United States,* 488 U.S. 361, 363–66, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); *Williams v. N.Y.,* 337 U.S. 241, 248, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)). Diverse attitudes and perceptions of local conditions may yield different, yet rational, conclusions regarding the appropriate length of prison terms for particular crimes. *Id.* (citing *Rummel v. Estelle,* 445 U.S. 263, 274, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980)). The simple fact that a state may have the most severe punishment for a particular crime does not by itself render the punishment grossly disproportionate. *Id.* We find Justice Scalia's observation in *Harmelin* instructive:

That a State is entitled to treat with stern disapproval an act that other States punish with the mildest of sanctions follows *a fortiori* from the undoubted fact that a State may criminalize an act that other States do not criminalize at all. Indeed, a State may criminalize an act that other States choose to reward—punishing, for example, the killing of endangered wild animals for which other States are offering a bounty. What greater disproportion could there be than that? "Absent a constitutionally imposed uniformity inimi-

cal to traditional notions of federalism, some State will always bear the distinction of treating particular offenders more severely than any other State." Diversity not only in policy, but in the means of implementing policy, is the very raison d'être of our federal system.

*Id.* at 989–90, 111 S.Ct. 2680 (emphasis in original) (citations omitted). In preserving the narrow proportionality principle in Harmelin, the Supreme Court adhered to the notion expressed in previous cases that severity alone does not render a sentence grossly disproportionate:

By contrast, *Rummel* and *Davis,* decisions in which the Court upheld sentences against proportionality attacks, did not credit such comparative analyses. In rejecting this form of argument, *Rummel* noted that "even were we to assume that the statute employed against *Rummel* was the most stringent found in the 50 states, that severity hardly would render *Rummel*'s punishment "grossly disproportionate" to his offenses. *Id.* at 1005, 111 S.Ct. 2680 (holding that intra-jurisdictional and inter-jurisdictional analyses are appropriate only in the rare cases in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality).

Appellant fails to demonstrate that section 56–5–1210's penalty provision is the harshest in the United States. But, even if he could, that fact alone would not render his punishment grossly disproportionate. Thus, an interjurisdictional analysis does not demonstrate that section 56–5–1210 provides a penalty that is significantly harsher than other states, or that is unsupported by reasonable and rationally related policy objectives.

Appellant requests this Court to draw new and impermissible lines, (1) instructing the General Assembly how and when to allow trial court discretion in sentencing and (2) directing the General Assembly adopt a sentencing structure in uniformity and harmony with an undefined number of states. This runs counter to the well-accepted principle that, in analyzing proportionality, reviewing courts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes. *See Solem,* 463 U.S. at 290, 103 S.Ct. 3001.

## CONCLUSION

When the proportionality principle jurisprudence is applied to section 56–51210 it is not evident that its repugnance to the constitution is clear beyond a reasonable doubt. *See Westvaco Corp. v. S.C. Dep't of Revenue,* 321 S.C. 59, 62, 467 S.E.2d 739, 741 (1995). Thus, we affirm the trial court's conclusion that section 56–5–1210 of the South Carolina Code is constitutional.

**AFFIRMED.**

BEATTY, KITTREDGE, AND HEARN, JJ., concur.

PLEICONES, J., concurring in result only.