# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Applied Building Sciences, Inc., Appellant,

v.

South Carolina Department of Commerce, Division of Public Railways, Respondent.

Appellate Case No. 2021-000051

———————

Appeal from Charleston County
Bentley Price, Circuit Court Judge

———————

Opinion No. 28184
Heard September 12, 2023 – Filed January 17, 2024

———————

## AFFIRMED

———————

Gene McCain Connell, Jr., of Kelaher, Connell & Connor, P.C., of Surfside Beach, for Appellant.

Keith M. Babcock and Joseph B. Berry, both of Lewis Babcock L.L.P., of Columbia, for Respondent.

Paul Dezso de Holczer, of Columbia, for Amicus Curiae South Carolina Department of Transportation. Bryan Eric Shytle, of Columbia, for Amicus Curiae Municipal Association of South Carolina.

**JUSTICE JAMES:** We certified this case pursuant to Rule 204(b), SCACR. We affirm the circuit court and hold the $50,000 statutory limit on reimbursement of

reestablishment expenses in condemnation proceedings set forth in S.C. Code Ann. section 28-11-30(4) (Supp. 2023) is constitutional.

## I.

Appellant Applied Building Sciences, Inc. (ABS) is an engineering firm that was a tenant in a building in Charleston County owned by Hibernian Heights, LLC (Landlord). The South Carolina Department of Commerce, Division of Public Railways (Public Railways) condemned the building and the surrounding real property (the Milford Property) for public use. Because ABS was a tenant of the Milford Property, ABS was entitled to just compensation for the value of its leasehold interest; thus, ABS was named as an "Other Condemnee" in the resulting condemnation action.

The taking of the Milford Property forced ABS to move its business operations to a new location. In addition to damages recoverable by ABS as just compensation for its leasehold interest in the Milford Property, ABS was entitled to reimbursement of two other types of expenses from Public Railways. First, under South Carolina Code section 28-11-10, a relocating business such as ABS may apply for reimbursement of reasonable expenses for moving tangible personal property to the new business location. Public Railways paid the moving expenses to ABS, and they are not an issue in this appeal.

Second, under S.C. Code section 28-11-30(4), a relocating business may seek reimbursement of other reestablishment expenses. S.C. Code section 28-11-30(4) provides:

> Reestablishment expenses related to the moving of a small business, farm, or nonprofit organization payable for transportation projects pursuant to federal guidelines and regulations may be paid in an amount *up to fifty thousand dollars*, notwithstanding a lower limitation imposed by federal regulations.

S.C. Code Ann. § 28-11-30(4) (emphasis added).

ABS renovated the replacement site and sought reimbursement from Public Railways for those expenses in excess of $560,000 ("reestablishment expenses"). Citing section 28-11-30(4), Public Railways refused to pay more than $50,000. Along with its claim for just compensation for the taking of its leasehold interest, ABS asserted an inverse condemnation claim against Public Railways for the entire amount of reestablishment expenses, alleging the $50,000 cap in section 28-11-30(4)

is unconstitutional under the Takings Clauses of the South Carolina and United States Constitutions.

Landlord, ABS, and Public Railways settled the condemnation action for $1,700,000, and ABS received a portion of the settlement proceeds as just compensation for its leasehold interest. ABS and Public Railways agreed to sever ABS's inverse condemnation claim and litigate it separately. ABS and Public Railways then filed cross motions for summary judgment with regard to that claim. The primary issue before the circuit court was whether the $50,000 cap is an unconstitutional limitation on the reimbursement of reestablishment expenses. The circuit court found the cap constitutional and granted Public Railways' motion for summary judgment. ABS appealed.

## II.

The Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (the Federal Relocation Act) was enacted to entitle any person "displaced" from his home or place of business by a federal or federally-funded project to relocation expenses, including reimbursement for certain moving expenses. 42 U.S.C. §§ 4601-4655; *Norfolk Redevelopment & Hous. Auth. v. Chesapeake & Potomac Tel. Co. of Va.*, 464 U.S. 30, 32 (1983). The Federal Relocation Act generally provides that displaced persons are entitled to the following benefits:

(1) actual reasonable expenses in moving himself, his family, business, farm operation, or other personal property;

(2) actual direct losses of tangible personal property as a result of moving or discontinuing a business or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the head of the agency;

(3) actual reasonable expenses in searching for a replacement business or farm; and

(4) actual reasonable expenses necessary to reestablish a displaced farm, nonprofit organization, or small business at its new site, but not to exceed $25,000, as adjusted by regulation, in accordance with section 4633(d) of this title.

42 U.S.C. § 4622(a). The Federal Relocation Act thus limits reestablishment expenses to $25,000. 42 U.S.C. § 4622(a)(4).

South Carolina codified the relocation requirements of the Federal Relocation Act in sections 28-11-10 to -70, mandating relocation payments to displaced persons and businesses regardless of whether a project uses any federal dollars. *See* S.C. Code Ann. § 28-11-10 (2007); *Brown v. City of N. Charleston*, 314 S.C. 298, 299-301, 442 S.E.2d 633, 634-35 (Ct. App. 1994); Act No. 1345, 1972 S.C. Acts 2522 (referring to relocation assistance "when any program or project undertaken involving acquisition of real property will result in displacement of any person or other legal entity"); 18 S.C. Jur. *Eminent Domain* § 22.1 (West 2023). When the government uses the power of eminent domain to take property which is being leased, the tenants may recover moving costs and rent differential payments. *See* S.C. Code Ann. § 28-11-10; *Brown*, 314 S.C. at 299-301, 442 S.E.2d at 634-35; 18 S.C. Jur. *Eminent Domain* § 22.1.

Section 28-11-30(4) was enacted in 2010 and, as noted above, caps at $50,000 "reestablishment expenses related to the moving of" small businesses, farms, and non-profit organizations. S.C. Code Ann. § 28-11-30(4). South Carolina's relocation assistance statute expressly provides: "Nothing in this chapter shall be construed as creating an element of damage in an eminent domain proceeding." S.C. Code Ann. § 28-11-70 (2007).[1]

### III.

This case hinges on two questions: (1) are reestablishment expenses separate from constitutional just compensation in an eminent domain action; and (2) is the statutory cap on the reimbursement of reestablishment expenses constitutional? We hold the answer to both questions is yes.

"This Court has a very limited scope of review in cases involving a constitutional challenge to a statute. All statutes are presumed constitutional and will, if possible, be construed so as to render them valid." *Joytime Distribs. & Amusement Co., Inc. v. State*, 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999) (citing

---

[1] Twenty-five other states have a statute authorizing the repayment of reestablishment expenses to a displaced farm, nonprofit organization, or small business as a result of eminent domain with a set monetary cap. The constitutionality of the statutes in other states has apparently not been challenged.

*Davis v. Cnty. of Greenville*, 322 S.C. 73, 77, 470 S.E.2d 94, 96 (1996)). "A legislative act will not be declared unconstitutional unless its repugnance to the constitution is clear and beyond a reasonable doubt." *Id.* (citing *Westvaco Corp. v. S.C. Dep't of Revenue*, 321 S.C. 59, 62, 467 S.E.2d 739, 741 (1995)). "A legislative enactment will be declared unconstitutional only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates a provision of the constitution." *Id.* (citing *Westvaco Corp.*, 321 S.C. at 62, 467 S.E.2d at 741). The party challenging the constitutionality of a statute bears the burden of establishing unconstitutionality. *Knotts v. S.C. Dep't of Nat. Res.*, 348 S.C. 1, 6, 558 S.E.2d 511, 513 (2002) (citing *Home Health Serv., Inc. v. S.C. Tax Comm'n*, 312 S.C. 324, 327, 440 S.E.2d 375, 377 (1994)).

The Takings Clause of the Fifth Amendment to the United States Constitution provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V; *see Chi., Burlington & Quincy R.R. Co. v. City of Chi.*, 166 U.S. 226, 239 (1897) (making the Takings Clause applicable to the states via the Due Process Clause of the Fourteenth Amendment). "As its text makes plain, the Takings Clause 'does not prohibit the taking of private property, but instead places a condition on the exercise of that power,'" namely, the payment of just compensation to the affected property owner. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005) (quoting *First Eng. Evangelical Lutheran Church of Glendale v. Cnty. of L.A.*, 482 U.S. 304, 314 (1987)).

The South Carolina Constitution states, "[P]rivate property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made for the property." S.C. Const. art. I, § 13. The General Assembly established how just compensation should be ascertained in an eminent domain proceeding in section 28-2-370 of the South Carolina Code: "In determining just compensation, only the value of the property to be taken, any diminution in the value of the landowner's remaining property, and any benefits as provided in § 28-2-360 may be considered." S.C. Code Ann. § 28-2-370 (2007).

Several United States Supreme Court decisions issued prior to the enactment of the foregoing federal and South Carolina relocation assistance statutes are pertinent to our decision today. The Supreme Court has noted the Constitution and statutes do not define "just compensation," but it has become recognized that "just compensation is the value of the interest taken," the so-called "market value." *United States v. Petty Motor Co.*, 327 U.S. 372, 377 (1946). In *Petty Motor*, as here, there was a complete taking of the tenant's leasehold interest. *Id.* at 378. As part of the tenant's evidence of just compensation for the loss of its leasehold interest, the trial court allowed the tenant to introduce evidence of the expenses the tenant

incurred in moving and reinstalling its equipment at its new business location.  *Id.* at 377.  The *Petty Motor* Court held this was error, finding the removal or relocation of personal property is not to be included in valuing property taken and that businesses displaced as a result of condemnation do not have a constitutional right to receive expenses related to relocation.  *See id.* at 377-78 ("Since 'market value' does not fluctuate with the needs of condemnor or condemnee but with general demand for the property, *evidence of loss of profits, damage to good will, the expense of relocation and other such consequential losses are refused in federal condemnation proceedings*." (emphasis added)).  The Court held the cost of removal or relocation should not be admitted because these costs "are apart from the value of the thing taken" and are "personal to the lessee."  *Id.*  at 378.  The Court noted the lessee would have to move at the end of his term unless the lease was renewed and, therefore, the compensation for the value of the leasehold covers the loss from premature termination in most situations.  *Id.* at 378-79.

*United States v. Westinghouse Electric & Manufacturing Co.* clarified that when the government takes a tenant's entire leasehold interest, the expenses of removal or of relocation are not to be included in valuing what is taken.  339 U.S. 261, 264 (1950).  The Supreme Court has also held the cost of removing personal property from land taken is recoverable only if provided for by statute.  *Joslin Mfg. Co. v. City of Providence*, 262 U.S. 668, 676 (1923) (holding "the cost of removing personal property from land taken is not a proper element of damage unless made so by express statute, and it was not an unconstitutional exercise of power for the Legislature, in creating the right, to define its extent" (internal citation omitted)).

"South Carolina courts have embraced federal takings jurisprudence as providing the rubric under which we analyze whether an interference with someone's property interests amounts to a constitutional taking."  *Hardin v. S.C. Dep't Transp*., 371 S.C. 598, 604, 641 S.E.2d 437, 441 (2007) (citing *Byrd v. City of Hartsville*, 365 S.C. 650, 656 n.6, 620 S.E.2d 76, 79 n.6 (2005)).  Therefore, *Petty Motor*, *Westinghouse*, and *Joslin Mfg. Co.* guide our decision today.  Because reestablishment expenses are separate from damages awardable as just compensation under the United States and South Carolina Constitutions, the $50,000 cap set forth in section 28-11-30(4) violates neither the Takings Clause of the Fifth Amendment nor Article I, section 13 of the South Carolina Constitution.  *Ashmore v. Greater Greenville Sewer Dist.*, 211 S.C. 77, 96, 44 S.E.2d 88, 96 (1947) (holding the General Assembly's plenary power is limited only by the United States and South Carolina Constitutions and legislation "not expressly or impliedly inhibited by one or the other of these documents may be validly enacted").

**IV.**

ABS has not met its burden of establishing the cap on reestablishment expenses in section 28-11-30(4) is unconstitutional. As long as the General Assembly acts within constitutional confines, it has plenary power to make policy decisions. Such a policy decision is reflected in the General Assembly's enactment of the $50,000 cap in section 28-11-30(4). *See Ashmore*, 211 S.C. at 96, 44 S.E.2d at 97 ("[I]n the General Assembly rests plenary legislative power, limited only by the constitutions, State and Federal."). We affirm the circuit court.

**AFFIRMED.**

**BEATTY, C.J., KITTREDGE, FEW and HILL, JJ., concur.**